**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 28 U.S.C. § 1331 or § 1346

(AMENDED COMPLAINT)

TAVON ROBINSON,

Inmate # 25182-038

(Enter full name of Plaintiff)

vs.

CASE NO: 5:11-cv-00693
(To be assigned by Clerk)

UNITED STATES OF AMERICA
DARRYL DREW (WARDEN),
JOHN OLIVER (Ass. WARDEN),
LOUIS WILLIAMS II (CAPTAIN),
RONALD PROFFITT (S.I.A)

(Enter name and title of each Defendant.
If additional space is required, use the
blank area below and directly to the right.)

FILED

2012 MAY 17  AM 10: 58

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
OCALA FLORIDA

**ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:**

RANDALL NOBLE (SIA);
ZORA GREGORY (SIS);
MATTHEW KLECLNER (SIS);
WILLIAM ADAMS (Lt.);
RAJESH SHARMA (Lt.);
LISANDRA MOORE (Lt.);
CONWAY CAREY (Lt.);
JULIUS SHULER (Officer);
SAMANTHA CARBONE (Case Man.);
Defendants.

I. **PLAINTIFF:**

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff: Tavon Robinson

Inmate Number: 25182 - 038

Prison or Jail: USP Pollock

Mailing address: PO Box 2099
Pollock, LA 71467

II. **DEFENDANT(S):**

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for <u>every</u> Defendant:

(1)  Defendant's name: UNITED STATES OF AMERICA
     Official position: Employer
     Employed at: USP Coleman 2
     Mailing address: 35 SE 1st Ave, Suite 300
     Ocala, FL 34471

(2)  Defendant's name: DARRYL DREW
     Official position: WARDEN
     Employed at: USP Coleman 2
     Mailing address: 846 NE 54th Terrace
     Coleman, FL 33521

(3)  Defendant's name: JOHN OLIVER
     Official position: Assistant Warden
     Employed at: USP Terre Haute
     Mailing address: 4700 Bureau Road South
     Terre Haute, IN 47802

**ATTACH ADDITIONAL PAGES HERE TO NAME ADDITIONAL DEFENDANTS**

2

(4) Louis Williams II
Captain
USP Coleman 2
846 NE 54th Street
Coleman, FL 33521

(5) Ronald Proffitt
Special Investigative Agent
USP Coleman 2
846 NE 54th St.
Coleman, FL 33521

(6) Randall Noble
Special Investigate Agent
USP Coleman 2
846 NE 54th St.
Coleman, FL 33521

(7) Zora Gregory
Special Investigative Supervisor
USP Coleman 2
846 NE 54th St.
Coleman, FL 33521

2 (A)

(8) Matthew Kleckner
Special Investigative Supervisor
USP Coleman 2
846 NE 54th St.
Coleman, FL 33521

(9) William Adams
Lieutenant
USP Coleman 2
846 NE 54th St.
Coleman, FL 33521

(10) Rajesh Sharma
Lieutenant
USP Coleman 2
846 NE 54th St.
Coleman, FL 33521

(11) Lisandra Moore
Lieutenant
USP Coleman 2
846 NE 54th St.
Coleman, FL 33521

2 (B)

(12) Conway Carey
Lieutenant
USP Coleman 2
846 NE 54th Street
Coleman, FL 33521

(13) Julius Shuler
Senior Officer
Coleman – Low
846 NE 54th Street
Coleman, FL 33521

(14) Samantha Carbone
Case Manager
Coleman – Low
846 NE 54th Street
Coleman, FL 33521

2 (c)

**NOTE:  THE COURT WILL NOT REVIEW THE COMPLAINT UNLESS THE
FOLLOWING QUESTIONS HAVE BEEN ANSWERED <u>IN FULL</u>.**

III.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action
regarding conditions or events in any prison, jail or detention center.  42 U.S.C. §
1997e(a).  Plaintiff is warned that any claims for which the administrative grievance
process was not completed prior to filing this lawsuit may be subject to dismissal.**

IV.    **PREVIOUS LAWSUITS**

**NOTE:  FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES
MAY RESULT IN THE DISMISSAL OF THIS CASE.**

A.    Have you initiated other actions in **state court** dealing with the same or similar
facts/issues involved in this action?

Yes(   )                    No(X )

1.    Type of action (civil rights, habeas corpus, etc.): _Not Applicable (N/A)_

2.    Parties to previous action:

a.    Plaintiff(s): _N/A_

b.    Defendant(s): _N/A_

3.    County and judicial circuit: _N/A_

4.    Case docket #: _N/A_

5.    Approximate filing date: _N/A_

6.    If not still pending, date of dismissal: _N/A_

7.    Basis of dismissal: _N/A_

8.    Facts and claims of case: _N/A_

**(Attach additional pages as necessary to list state court cases.)**

3

B.    Have you initiated other actions in **federal court** dealing with the same or similar facts/issues involved in this action?

Yes( )                          No( X )

1.    Type of action (civil rights, habeas corpus, etc.): ___N/A___

2.    Parties to previous action:

a.    Plaintiff(s): ___N/A___

b.    Defendant(s): ___N/A___

3.    District and judicial division: ___N/A___

4.    Case docket #: ___N/A___    5. Approximate filing date: ___

6.    If not still pending, date of dismissal: ___N/A___

7. Basis of dismissal: ___N/A___

8. Facts and claims of case: ___N/A___

_____

**(Attach additional pages as necessary to list other federal court cases.)**

C.    Have you initiated other actions (*besides those listed above in Questions (A) and (B)*) in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes( X )                          No( )

If YES, describe each action in the space provided below.  If more than one, describe all additional cases on a separate piece of paper, using the same format as below.

1.    Type of action (civil rights, habeas corpus, etc.): Habeas Corpus

2.    Parties to previous action:

a.    Plaintiff(s): Tavon Robinson

b.    Defendant(s): United States of America

4

3. District and judicial division: _First Circuit_

4. Case docket #: _Don't Know_   5. Approximate filing date: _2007_

6. If not still pending, date of dismissal: _Don't Know_

7. Reason for dismissal: _Failed to prove ineffective Assistance_

8. Facts and claims of case: _The lawyer provided ineffective assistance of counsel._

**(Attach additional pages as necessary to list cases.)**

D. Have you ever had, either while you were incarcerated or while you were not incarcerated, any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:

Yes( )                    No(X)

1. Type of action (civil rights, habeas corpus, etc.): _N/A_

2. Parties to previous action:

   a. Plaintiff(s): _N/A_

   b. Defendant(s): _N/A_

3. District and judicial division: _N/A_

4. Name of judge: _N/A_   Case Docket # _____

5. Approximate filing date: _____   Dismissal date: _____

6. Reason for dismissal: _N/A_

**(Attach additional pages as necessary to list cases.)**

❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀ ❀

- Continue to next page -

5

C.

(1) Habeas Corpus (28 USC 2241)

(2) (a) Tavon Robinson
    (b) Darryl Drew (Warden)

(3) Middle District of Florida

(4) Case docket # (I don't know)

(5) 2007

(6) Dismissal Date: (Don't know)

(7) DHO said, they had enough evidence

(8) The DHO lacked enough evidence to sanction a punishment.

5 (A)



## V.   STATEMENT OF FACTS:

State briefly the FACTS of this case.  Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim.  In describing what happened, state the names of persons involved, dates, and places.  Do not make any legal arguments or cite to any cases or statutes.  You must set forth separate factual allegations in separately numbered paragraphs.  You may make copies of this page if necessary to supply all the facts.  Barring extraordinary circumstances, no more than five (5) additional pages should be attached.  (If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)

1) On December 31, 2009, Plaintiff was removed from housing unit L-1, at USP-2, & placed in SHU at Coleman Low. Five other inmates were removed from various housing units at USP-2 & sent to Coleman Low SHU along with Plaintiff.

2) Upon arriving at Coleman Low SHU, Plaintiff was informed by SIS Adams (Then SHU Lt. Adams) that He was under an SIA investigation. Adams told Plaintiff that he had nearly no information on the nature of His investigation, but that he was instructed to disallow Plaintiffs phone & visit use.

3) Upon arriving at Coleman Low SHU, Plaintiff was placed in a cell with inmate Derrin Hernandez. (One of the other five inmates removed).

4) From January 1st, through approximately, January 22nd, 2010, Plaintiff asked Adams, almost daily, to find out why He was being detained & investigated by SIA, & why He hadn't received any of His Personal property.

5) Adams always responded that he was e-mailing SIA & SIS at USP-2, but was not getting any helpful information.

6) From January 1st - January 22, 2010, Plaintiff received no information about His property nor detention, nor did He see anybody from any unit team.

7) On or about January 22, 2010, Plaintiff was removed from the recreation cage by Case manager Corbins (Then C.O. Corbins). She told Plaintiff that the SHU Lt. wanted to speak with Him.

6

8) When Plaintiff entered a rear office, He was met by S1/1 Noble, a DEA Agent & an agent from the DOJ. Both agents identified themselves verbally & displayed their badges. Plaintiff was familiar with Noble from his years as a Lt. at USP-2.

9) Plaintiff told Noble that He did not wish to speak to any of the agents. Noble told Plaintiff that He did not have to talk, but He had to listen to what the agents had to say. Plaintiff reluctantly agreed, & remained silent as the agents spoke.

10) The agents spoke of a corrupt officer, who was allegedly introducing contraband at USP-2. They accused Plaintiff of possibly being involved in the alleged crime, & asked for His cooperation in their investigation.

11) Plaintiff rejected the agents request for cooperation, & in turn, was threatened with self & family members prosecution, as well as his/her prison time.

12) Plaintiff asked Noble to be removed from the office to no avail.

13) Plaintiff kicked on the office door & was removed by a C.O.

14) Noble told Plaintiff that he hated dirty officers, & that Plaintiff would pay for not cooperating with the investigation.

15) From January 2010 - approximately February 5, 2010; Plaintiff began to file grievances concerning His personal property, SHU confinement & investigation status.

16) Plaintiff did not receive a response to any of His grievances.

17) On or about February 5, 2010, Officer Shuler was the property officer at Coleman for SHU. On or about this day, Shuler took Plaintiff to the property room to review & inventory His personal property.

6 of 3

18) While inventorying His property, Plaintiff noticed many items were missing (namely His manuscript & lots of legal papers). When Shuler opened Plaintiffs 3 photo albums, all of them were empty (2 photo albums held approximately 100 photo's apiece; 1 photo album held approximately 300 photos. Both photo albums were full, & photo's were neatly stored inside of them).

19. Plaintiffs photos were a reflection of His life – memories captured in time that He can never get back. Photo's of Plaintiffs family, friends, deceased, children, childhood & much more lived inside of His photo albums. Plaintiff, Himself, was in many of the photos, & photos of Himself were on the outside of the photo albums.

20) Shuler advised Plaintiff to file a tort claim for His missing property. He also showed Plaintiff a confiscation/contraband form that came along with His property. The confiscation form listed 6 confiscated items, & was signed by STA Proffitt. Among the 6 confiscated items on the form were 586 photos (See confiscation form attached).

21) Shuler told Plaintiff, if He wanted to claim the items on the confiscation form, Plaintiff would have to fill out the form & return it to him on the following Monday (on or about February 8, 2010).

22) Plaintiff properly filled out the confiscation form, over the weekend, & ordered Proffitt to send the confiscated material to Plaintiffs mothers address, which Plaintiff provided in the proper section.

23) On or about February 8, 2010, at Plaintiffs request, Shuler took Plaintiff to a copy machine & made several copies of the completed property form for Plaintiff. Plaintiff, personally, watched Shuler put a copy of the completed form in Plaintiffs personal property file folder.

34) On or about February 8, 2010, Plaintiff mailed Proffitt the completed confiscation form, along with a letter attached that explained that Plaintiff was missing more personal property, & requesting that he be treated fairly while under SIA investigation. Plaintiff mailed the completed confiscation form through U.S. Postal Mail, as well as through Institutional Mail service.

35) At some point in Mid-March, Defendant Carbone was assigned to Plaintiff as a Case Manager. Plaintiffs mother still hadn't received his confiscated items, so Plaintiff provided Carbone with a copy of the completed confiscation form & asked her to forward it to Proffitt.

36) On numerous occasions, over the next few weeks, following Plaintiff providing Carbone with the completed Confiscation Form, Plaintiff & Carbone spoke on the matter concerning his confiscated property. Carbone told Plaintiff that she forwarded a copy of the confiscation form to Proffitt, & had been e-mailing him about it. At one point, Carbone told Plaintiff that Proffitt told her something to the affect of stop bothering him about Plaintiffs complaints.

37) Upon information & belief, in late February & late March, 2010, & in mid-April, 2010, Federal agents returned to Coleman Low SHU in order to see Plaintiff again.

38) Plaintiff refused to meet with the agents on each occassion.

39) On one occasion, Lt. Carey denied Plaintiff his recreation period, because Plaintiff refused to leave his cell to talk to the agents. Carey told Plaintiff that he refused an order to cuff up & go be interviewed, therefore Plaintiff refused his recreation hour.

6 (C)

30) From approximately February 8, through August 19, 2010, Plaintiff filed numerous grievances about his property not being mailed to his mother, & on the conditions of his detention. Plaintiff, verbally & in writing, addressed Shuler, Carbone, Adams, Carey, Lt. Sharma, Lt. Moore, & other staff about these issues.

31) On seperate occasions, Carey, Sharma & Moore told Plaintiff that they either e-mailed or called Proffitt & Noble about his issues, but were either ignored or given very little information that didn't assist in solving Plaintiffs problems.

32) Plaintiffs verbal & written grievances were not being answered or addressed, &, upon information & belief, they were not being processed by staff.

33) Due to Plaintiffs grievances not being answered or addressed in any way, Plaintiff exhausted the Administrative Remedy process through "Sensitive" grievances to the Southeast Regional office, & to Office of General Counsel. "Sensitive" grievances are addressed directly to the Regional Director when sensitive issues are occurring at a prison.

34) Plaintiffs "sensitive" grievances were rejected by the Southeast Regional Office & the Office of General Counsel.

35) In early August, 2010, Lt. Moore informed Plaintiff that SIA lifted the restrictions on his phone & visits. After 8 months of disallowance under SIA order, Plaintiff was finally able to use the phone & have visits with out any SIA interference.

36) On August 19, 2010, Plaintiff was informed by Lt. Sharma that he would be taken to the SHU at Coleman USP-2 that night. He informed Plaintiff that he had done all that he could to recover his property, but SIA at USP-2 was not cooperating with him.

32) Later that night (August 19, 2010), SIS Merchant met with Plaintiff at Coleman Low SHU, & informed Him that He would, in fact, be sent to USP-2 SHU, & that he (Merchant) was working on Plaintiffs final report to the investigation. Merchant told Plaintiff that He would be sent back to general population, or transferred to another facility with in 30 to 60 days.

33) Plaintiff asked Merchant why hadn't His property been sent to His mothers address yet, & Merchant told Plaintiff that he would check on it & get back to Him shortly.

34) Plaintiff, & 3 of the other 5 inmates that were brought to ~~Coleman~~ Low SHU with Him, was sent back to USP-2 SHU that night (August 19, 2010).

<u>USP-2 SHU – August 20, 2010 - approximately July 7, 2011</u>

40) On or about August 20, 2010, SIS Kleckner approached Plaintiff while Plaintiff was in the recreation cage. Kleckner accused Plaintiff of participating in crimes with the USP-2 staff member that was allegedly being prosecuted at the time, & told Plaintiff that he would not let Him off the hook easy. Kleckner told Plaintiff to stop filing grievances, & that most of Plaintiffs grievances were inside of his paper shredder.

40) On or about August 26, 2010, property officer Ramirez informed Plaintiff that all of the property that Plaintiff had at Coleman Low SHU property room was lost.

41) From August 20, 2010 – approximately October 11, 2010, Plaintiff, verbally & in writing, addressed L-1 Counselor, Smith & L-2 Case Manager, ~~Frasier~~; about His property & investigation status. Plaintiff also addressed Merchant, Lt. Carey & Lt. McCullough about these issues.

42) SIS Merchant repeated that he would look into Plaintiffs issues, but informed Him that Proffitt did not answer to anybody besides Warden Drew.

6(E) ■■■

44) Lt. McCullough took Plaintiff to the SHU Lt.'s office & let him speak with Noble over the speaker phone. In McCullough's presence, Noble told Plaintiff that he did not care about Plaintiffs photos or property, & that, since Plaintiff did not cooperate with the investigation, Plaintiff had bigger problems, because he would be getting indicted along with officer Eason.

45) Some time in late August, 2010, Plaintiff saw Captain Williams for the first time since being placed in SHU. Williams told Plaintiff that he could not transfer him nor release him to general population, because the United States Attorneys office had a detainer on him. He also informed Plaintiff that he would find out why his photos & property was not mailed to his mothers house.

46) Sometime in late August, 2010, Plaintiff saw Warden Drew for the first time since being placed in SHU. Plaintiff spoke to Drew on 3 occasions, & on all 3 occasions, Drew told Plaintiff that he had no idea about anything that was going on with Plaintiffs investigation or property. The first time Plaintiff & Drew spoke, Drew told Plaintiff that he would look into Plaintiffs issues.

47) Counselor Smith & Case Manager Frasier told Plaintiff that his investigation was over their heads, & that nobody would tell them anything. They advised plaintiff to file a tort claim on his missing & confiscated property from December 31, 2009, & a seperate tort claim for the lost property from his August 19, 2010 move from Coleman Low SHU to USP-2 SHU.

48) On or about October 11, 2010, Frasier gave Plaintiff a tort form to fill out for his missing & confiscated property from December 31, 2009. Plaintiff filled out the form & filed it the same day.

49) On or about October 27, 2010, Smith gave Plaintiff a tort form to fill out for the lost property from August 19, 2010. Plaintiff filled out the form, & filed it the same day.

50) Even after Plaintiff filed both torts, he still filed administrative grievances to try to recover his property. Plaintiffs remedies were denied & rejected.

51) On or about January 20, 2011, SIS Gregory spoke to Plaintiff while he was in the recreation cage. Gregory informed Plaintiff that he was the liason between SIA & SIS, & that he was working closely to Plaintiffs investigation. He told Plaintiff that he would be the one to do Plaintiffs final interview & make all of the necessary recommendations. He said, at that point, nobody actually knew why Plaintiff was still being held in SHU, but he admitted that the institution had never prosecuted an officer before; so they weren't sure what to do with Plaintiff sense His investigation was related to that prosecution.

52) Gregory told Plaintiff that he read at least 2 of His requests about His property, but was unsure of what was going on with it. He said that he would look into it for Plaintiff.

53) On or about February 17, 2011, the "lost" property, from the August 19, 2010 return to USP-2 SHU, was found & returned to Plaintiff, only after Plaintiff Filed a tort claim on it.

54) On or about March 3, 2011, Plaintiff learned, for the first time, that on July 15, 2010 His photos & other confiscated property was destroyed. Plaintiff received a letter, from Supervisory Attorney Zachary Kelton, informing Him that His Tort claim had been denied on February 17, 2011.

55) On or about March 13, 2011, Plaintiff filed a request for reconsideration of His denied Tort claim. Based on the reasons for the denial of Plaintiffs tort claim, Plaintiff re-filed the exact same claim & attachments.

56) In early July, 2011, Kelton responded to Plaintiff again, informing Him that His request for reconsideration was denied on June 23, 2011.

57) Upon information & belief, Proffitt destroyed Plaintiffs photos & property in re-taliation for His non-cooperation in the investigation, & filing of grievances, & he did so with out providing Plaintiff with Due Process before such destruction.

6 (G)

## VI.   STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated.  Be specific.  Number each separate claim and relate it to the facts alleged in Section V.  If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.

COUNT I

PLAINTIFFS DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT WERE VIOLATED BY SEIZING AND DESTROYING PLAINTIFFS PROPERTY

(Continued on Page 7(A))

## VII.   RELIEF REQUESTED:

State briefly what relief you seek from the Court.  Do not make legal arguments or cite to cases/ statutes.

WHEREFORE, Plaintiff respectfully prays this Court:
(A) Declare that the acts and omissions described herein violated Plaintiff rights under the Constitution & laws of the US; (B) Order Defendants to pay reasonable attorney fees & costs; (C) Order Defendants to pay punitive & nominable damages ~~in the amount~~ in the amount to be proven at trial; (D) Grant other just and equitable relief that deems necessary.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

May 10, 2012
(Date)

_____
(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☑ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on:
the _10_ day of _May_ , 20 _12_ .

_____
(Signature of Plaintiff)

Revised 2/12

VI. CAUSE OF ACTION

Count I

PLAINTIFFS DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT WERE

VIOLATED BY SEIZING & DESTROYING PLAINTIFFS PROPERTY

1. The actions of Captain Williams, Proffitt, Noble & Shuler in destroying Plaintiffs photos & other property violated the rights of the Plaintiff to Due Process of the law under the Fifth Amendment to the Constitution of the United States, which guarentees that prisoners are entitled to at least minimal procedural safeguards before they may be deprived of their property, thereby ensuring that their constitutional rights are not entirely abrogated.

2. Plaintiff is informed, believes, & therefore alleges that the actions of Williams, Proffitt, Noble & Shuler, in seizing & destroying Plaintiffs photos & other property without providing minimal procedural safeguards, which constituted a deliberate violation of Bureau of Prisons (BOP) policy statement 5580.07, was part of a pattern of conduct in violation of Plaintiffs rights.

3. Moreover, Williams, Proffitt, Noble & Shuler acted outside the scope of their agency, outside the pattern, practice/policy or custom of the BOP &/or in an intentional, malicious or corrupt manner in their dealings with this Plaintiff, & therefore, Williams, Proffitt, Noble, & Shuler, are personally liable for the violation of Plaintiffs rights.

4. Plaintiff has suffered injury, including irreparable injury, & damages as a direct proximate result of Williams, Proffitt, Noble & Shulers destruction of Plaintiffs photos & other property as alleged herein. These Defendants are jointly & severally liable to Plaintiff for all such damages in an amount of $339,475.75 (three hundred-thirty nine thousand, Four hundred-seventy five dollars & seventy five cents) to be proven at trial.

7 (A)

COUNT II

PLAINTIFFS DUE PROCESS RIGHTS WERE VIOLATED WITH GROSS
NEGLIGENCE & DELIBERATE IGNORANCE TO THE U.S. CONSTITUTION
& BOP'S ESTABLISHED POLICY — PROFFITT ONLY

5. The conduct of Proffitt in destroying Plaintiffs photos & other property was purposeful & with knowledge that it constituted a breach of his duty to observe & honor the rights of others.

6. In addition, the actions of Proffitt were done needlessly, manifesting a conscious & reckless disregard of & deliberate indifference to the rights of others. The conduct of Proffitt amounted to gross negligence in the performance of his duties owed to Plaintiff.

7. As a direct & proximate result of Proffitts actions herein, Plaintiff has suffered damages for his missing property, as well as destroyed photos & other property as alleged herein. Proffitt is liable to Plaintiff for all such damages in an amount of $339,475.75 to be proven at trial.

COUNT III

PLAINTIFFS DUE PROCESS RIGHTS WERE VIOLATED WITH GROSS
NEGLIGENCE & DELIBERATE IGNORANCE TO BOP's ESTABLISHED
POLICY INVOLVING DETENTION — All Defendants

8. The actions of Defendants in punishing Plaintiff for remaining silent in accordance with his fifth Amendment right, violated his Due Process rights, which guarentees that prisoners are entitled to at least minimal procedural safeguards before

7 (R)

they may be deprived of life, liberty & property, thereby ensuring that their consti-
tutional rights are not entirely abrogated.

9. The actions of Defendants in punishing Plaintiff in violation of BOP's policy state-
ment 5270.08 was outside the scope of their agency, outside the pattern,
practice, policy or custom of the BOP, &/or in an intentional, malicious or
corrupt manner in their dealings with Plaintiffs & therefore, Defendants are
personally liable for the violation of Plaintiffs rights.

10. The sanction of denying phone, visits & continuous detention in SHU by the De-
fendants is in clear violation of the Fifth Amendment of the U.S. Constitu-
tion, which was a direct result of Plaintiff remaining silent, thereby mani-
festing a conscious & reckless disregard of, & deliberate indifference to Plain-
tiffs liberty interests in accordance with the Fifth Amendment.

11. Plaintiff has suffered injury, including irreparable injury, & damages as a direct
& proximate result of Defendants continued deliberate ignorance of the Fifth
Amendment & policy statement 5270.08 as alleged herein. Defendants are jointly &
severally liable to Plaintiff for all such damages in the amount of $100,000.⁰⁰
each, to be proven at trial.

COUNT IV

PLAINTIFF WAS RETALIATED AGAINST IN VIOLATION OF THE

FIRST AMENDMENT TO THE CONSTITUTION

12. The actions of Drew, Oliver, Williams, Proffitt, Noble, Gregory, Sharne, Carey,
Adams, Moore & Kleckner in punishing Plaintiff for verbal & written grievances
violated the rights of the Plaintiff in accordance with the First Amendment to
the US Constitution, which guarantees the right to petition the Government.

13. Plaintiff is informed, believes and therefore allege that the actions of Defendants punishing for filing oral and written grievances was a deliberate violation of BOP's policy statement 1330.16 (Administrative Remedy Program) was part of a pattern of conduct in violation of Plaintiff's ~~█████~~ First Amendment rights.

14. In addition, Defendants acted outside the scope of their agency, outside the pattern, practice, policy or custom of the BOP, and or in an intentional, malicious or corrupt manner in their dealings with Plaintiff, and therefore Defendants are personally liable for the violation of Plaintiff's rights.

7 (D)

UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF FLORIDA

JAVON ROBINSON,

Plaintiff,

    VS.

UNITED STATES OF AMERICA;

DARRYL DREW, Warden (Coleman USP-2);

JOHN OLIVER, Assistant Warden (USP-2);

LOUIS WILLIAMS II, Captain (USP-2);

RONALD PROFFITT, Special Investigative

Agent (USP-2); RANDALL NOBLE, Special

Investigative Agent (USP-2); ZORA

GREGORY, Special Investigative Supervisor

(USP-2); MATTHEW KLECKNER, Special Investigative

Supervisor (USP-2); WILLIAM ADAMS, Lieutenant

(Coleman Low); RAJESH SHARMA, Lieutenant (Coleman

Low); LISANDRA MOORE, Lieutenant (Coleman Low);

CONWAY CAREY, Lieutenant (Coleman Low);

JULIUS SHULER, Officer (Coleman Low);

SAMANTHA CARBONE, Case Manager (Coleman Low),

Defendants,

Sued in their individual & official Capacities.

Civil Action No: 5:11-cv-00693-SDM-TBS

# (AMENDED COMPLAINT)

JURY TRIAL DEMAND

COMPLAINT FOR MONEY DAMAGES

## I. JURISDICTION

1. Plaintiff brings this lawsuit pursuant to 28 U.S.C. 1346 (b) & 2671-80, seeking relief under the Federal Tort Claims Act (FTCA), & under Bivens v. Six Unknown Fed. Narcotics Agents.

## II. VENUE

2. The Middle District of Florida is an appropriate venue under 28 U.S.C. 1391 (b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## III. PARTIES

3. Plaintiff, Tavon Robinson, was, at all times relevant to this action, a prisoner incarcerated at the Federal Correctional Complex, in Coleman, Florida, which is in the Middle District of Florida.

4. Defendant, D.B. Drew, was, at all times relevant to this action, the Warden at Coleman USP-2, & acting under the color of Federal & State law. By policy/statute, the Warden is responsible for the total operation of the institution. He is sued in his individual & official capacities.

5. Defendant, John Oliver, was, at all times relevant to this action, the Assistant Warden at Coleman USP-2, & was acting under the color of Federal & State law. He is sued in his individual & official capacities

2

6. Defendant, Williams, was, at all times relevant to this action, the Captain at Coleman USP-2. The Captain is responsible for the custody, security, & protection of everyone in the institution. He is sued in his individual & official capacities.

7. Defendant, Proffitt, was, at all times relevant to this action, a Special Investigative Agent at Coleman USP-2. Special Investigative Agents (SIA) responsibilities include conducting investigations of staff, & acting as liaisons with the Department of Justice (DOJ) officials. He is sued in his individual & offical capacity.

8. Defendant, Noble, was, at all times relevant to this action, SIA at Coleman USP-2. He is sued in his individual & official capacities.

9. Defendant, Gregory, was, at all times relevant to this action, a Special Investigative Supervisor (SIS) at Coleman USP-2. SIS has the responsibilities of investigating crimes committed by inmates in the prison. He also acted as liaison between SIA & Plaintiff. He is sued in his individual & official capacities.

10. Defendant, Shuler, was, at all times relevant to this action, the property officer at Coleman Low. He has the responsibility of receiving, storing & filing inmates property. He is sued in his individual & official capacities.

11. Defendant, Sherzer, was, at all times relevant to this action, a Lieutenant in Special Housing Unit (SHU) at Coleman Low. The SHU Lt. has the responsibility of running the day-to-day operations in SHU. He is sued in his individual & official capacities.

12. Defendant, Moore, was, at all times relevant to this action, a Lt. in SHU at Coleman Low. She is sued in her individual & official capacity.

13. Defendant, Carey, was, at all times relevant to this action, a Lt. in SHU, at both Coleman Low & USP-2. He is sued in his individual & official capacities.

14. Defendant, Klechner, was, at all times relevant to this action, SIS at Coleman USP-2. He is sued in his individual & official capacity.

15. Defendant, Adams, was, at all times relevant to this action, a Lt. in SHU at Coleman Low. He is sued in his individual & official capacities.

16. Defendant, Carbone, was, at all times relevant to this action, a Case Manager assigned to Plaintiff at Coleman Low. The Case Manager is responsible for, among other things, preparing classification material, progress reports & correspondence for inmates. The Case Manager serves as a liaison between the inmate, the administration & the community. She is sued in her individual & official capacities.

* (NOTE: Federal Correctional Complex in Coleman, FL is made up of 2 Penitentiaries [USP-1 & USP-2], 1 Medium Facility, 1 Low Facility, 1 Female prison camp)

## IV. EXHAUSTION OF REMEDIES

17. Plaintiff has exhausted his Administrative Remedies as required by prison policy & statute.

## V. Factual Allegations

18. Plaintiff is currently being held in SHU at Coleman Low, & has been held in SHU at Coleman Low & USP-2 SHU since December 31, 2009.

                    Coleman Low SHU - December 31, 2009 - August 19, 2010

19. On December 31, 2009, Plaintiff was removed from housing unit L-1, at USP-1, & placed in SHU at Coleman Low. Five other inmates were removed from various housing units at USP-2, & sent to Coleman Low SHU along with Plaintiff.

4

20. Upon arriving at Coleman Low SHU, Plaintiff was informed by SIS Adams (then SHU Lt. Adams) that He was under an SIA investigation. Adams told Plaintiff that he had nearly no information on the nature of His investigation, but that he was instructed disallow Plaintiffs phone & visit use.

21. Upon arriving at Coleman Low SHU, Plaintiff was placed in a cell with inmate Devria Hernandez (one of the other five inmates mentioned above).

22. From January 1st, though approximately January 22nd, 2010, Plaintiff asked Adams, almost daily, to find out why He was being detained & investigated by SIA, & why He hadn't received any of His Personal property.

23. Adams always responded that he was e-mailing SIA &SIS at USP-2, but was not getting any helpful information.

24. From January 1st - January 22, 2010, Plaintiff received no information about His property nor detention, nor did He see anybody from any Unit team.

25. On or about January 22, 2010, Plaintiff was removed from the recreation cage by Casemanager Carbone (then C.O. Carbone). She told Plaintiff that the SHU Lt. wanted to speak with Him.

26. When Plaintiff entered a rear office, He was met by SIA Noble, a DEA agent & an agent from the DOJ. Both agents identified themselves verbally, & displayed their badges. Plaintiff was familiar with Noble from his years as a Lt. &SIS at USP-2.

27. Plaintiff immidiately told Noble that He did not wish to speak to any of the agents. Noble told Plaintiff that He did not have to talk, but He at least had to listen to what the agents had to say. Plaintiff reluctantly agreed, & remained silent as the agents spoke.

28. The agents told Plaintiff that they were aware of a corrupt officer, at USP-2, who was introducing contraband into the institution. They accused Plaintiff of having knowledge of the officers alleged crime, as well as possibly being involved in the crime.

5

They asked Plaintiff to assist them in prosecuting this officer, in exchange for a significant time cut in His prison sentence, as well as protection from prosecution.

29. When the agents were finished talking, Plaintiff told them that He did not wish to help them in any way, & that He did not wish to speak with them at all.

30. After Plaintiff stated that He would not help the agents in their attempt to prosecute the officer, the agent from the DOJ began to threaten Him with the prosecution of Himself, His mother, & other Family members, as well as even harsher prison time.

31. Plaintiff asked Noble to take Him out of the office, but Noble told Him that the agents weren't done with Him.

32. Plaintiff kicked on the office door until an officer came to get Him. Plaintiff was put inside of a holding cell.

33. While inside of the holding cell, Noble approached Plaintiff & told Him that he hated dirty officers, & that Plaintiff would pay for not co-operating with the investigation & prosecution.

34. From January 22 — Approximately February 5, 2010, Plaintiff began to file grievances with members of the unit team assigned to Him at Coleman Low SHU. The grievances concerned His Personal property, & the status of His investigation & SHU confinement.

35. Plaintiff did not receive a response to any of His grievances.

36. On or about February 5, 2010, Officer Shuler was the property officer at Coleman Low SHU. On or about this day, Shuler removed Plaintiff from His cell, took Him to the property room, & allowed Him to review & inventory His Personal property.

37. While inventorying His property, Plaintiff noticed many items were missing (namely His manuscript & lots of legal papers). When Shuler opened Plaintiffs 3 photo albums, all of them were empty (2 photo albums held approximately 100 photo's apiece; 1 photo album held approximately 300 photos. Both photo albums were full, & photo's were neatly stored inside of them).

38. Plaintiffs photos were a reflection of His life — memories captured in time that He can never get back. Photo's of Plaintiffs family, friends, deceased, Children, Childhood & much more lived inside of His photo albums. Plaintiff, Himself, was in many of the photos, & Photos of Himself were on the outside of the photo albums.

39. Shuler advised Plaintiff to file a tort claim for His missing property. He also showed Plaintiff a confiscation/contraband form that came along with His property. The confiscation form listed 6 confiscated items, & was signed by STA Proffitt. Among the 6 confiscated items on the form were 586 photos (See confiscation form attached).

40. Shuler told Plaintiff, if He wanted to claim the items on the confiscation form, Plaintiff would have to fill out the form & return it to him on the following Monday (on or about February 8, 2010).

41. Plaintiff properly filled out the confiscation form, over the weekend, & ordered Proffitt to send the confiscated material to Plaintiffs mothers address, which Plaintiff provided in the proper section.

42. On or about February 8, 2010, at Plaintiffs request, Shuler took Plaintiff to a copy machine & made several copies of the completed property form for Plaintiffs. Plaintiff, Personally, watched Shuler put a copy of the completed form in Plaintiffs Personal property file folder.

7

43. On or about February 8, 2010, Plaintiff mailed Proffitt the completed confiscation form, along with a letter attached that explained that Plaintiff was missing more Personal property, & requesting that He be treated fairly while under SIA investigation. Plaintiff mailed the completed confiscation form through U.S. Postal Mail, as well as through Institutional Mail service.

44. At some point in Mid-March, Defendant Carbone was assigned to Plaintiff as a Case Manager. Plaintiffs mother still hadn't received His confiscated items, so Plaintiff provided Carbone with a copy of the completed confiscation form & asked her to forward it to Proffitt.

45. On numerous occassions, over the next few weeks, following Plaintiff providing Carbone with the completed Confiscation form, Plaintiff & Carbone spoke on the matter concerning His confiscated property. Carbone told Plaintiff that she forwarded a copy of the confiscation form to Proffitt, & had been e-mailing him about it. At one point, Carbone told Plaintiff that Proffitt told her something to the affect of stop bothering him about Plaintiffs complaints.

46. Upon information & belief, in late February & late March, 2010, & in mid-April, 2010, Federal agents returned to Coleman Low SHU in order to see Plaintiff again.

47. Plaintiff refused to meet with the agents on each occassion.

48. On one occassion, Lt. Carey denied Plaintiff His recreation period, because Plaintiff refused to leave His cell to talk to the agents, Carey told Plaintiff that He refused an order to cuff up & go be interviewed, therefor Plaintiff refused His recreation hour.

49. From approximately February 8, through August 19, 2010, Plaintiff filed numerous grievances about his property not being mailed to his mother, & on the conditions of his detention. Plaintiff, verbally & in writing, addressed Shuler, Carbone, Adams, Carey, Lt. Sharma, Lt. Moore, & other staff about these issues.

50. On seperate occasions, Carey, Sharma & Moore told Plaintiff that they either e-mailed or called Proffitt & Noble about his issues, but were either ignored or given very little information that didn't assist in solving Plaintiffs problems.

51. Plaintiffs verbal & written grievances were not being answered or addressed, &, upon information & belief, they were not being processed by staff.

52. Due to Plaintiffs grievances not being answered or addressed in any way, Plaintiff exhausted ~~the~~ the Administrative Remedy process through "Sensitive" grievances to the Southeast Regional office, & to office of General Counsel. "Sensitive" grievances are addressed directly to the Regional Director when sensitive issues are occurring at a prison.

53. Plaintiffs "Sensitive" grievances were rejected by the Southeast Regional office & the office of General Counsel.

54. In early August, 2010, Lt. Moore informed Plaintiff that SIA lifted the restrictions on his phone & visits. After 8 months of disallowance under SIA order, Plaintiff was finally able to use the phone & have visits with out any SIA interferance.

55. On August 19, 2010, Plaintiff was informed by Lt. Sharma that he would be taken to the SHU at Coleman USP-2 that night. He informed Plaintiff that he had done all that he could to recover his property, but SIA at USP-2 was not cooperating with him.

9

56. Later that night (August 19, 2010), SIS Merchant met with Plaintiff at Coleman Low SHU, & informed Him that He would, in fact, be sent to USP-2 SHU, & that he (Merchant) was working on Plaintiffs final report to the investigation. Merchant told Plaintiff that He would be sent back to general population, or transferred to another facility with in 30 to 60 days.

57. Plaintiff asked Merchant why hadn't His property been sent to His mothers address yet, & Merchant told Plaintiff that he would check on it & get back to Him shortly.

58. Plaintiff, & 3 of the other 5 inmates that were brought to ~~Coleman~~ Coleman Low SHU with Him, was sent back to USP-2 SHU that night (August 19, 2010).

**USP-2 SHU – August 20, 2010 - approximately July 7, 2011**

59. On or about August 20, 2010, SIS Kleckner approached Plaintiff while Plaintiff was in the recreation cage. Kleckner accused Plaintiff of participating in crimes with the USP-2 staff member that was allegedly being prosecuted at the time, & told Plaintiff that he would not let Him off the hook easy. Kleckner told Plaintiff to stop filing grievances, & that most of Plaintiffs grievances were inside of his paper shredder.

60. On or about August 26, 2010, property officer Ramirez informed Plaintiff that all of the property that Plaintiff had at Coleman Low SHU property room was lost.

61. From August 20, 2010 – approximately October 11, 2010, Plaintiff, verbally & in writing, addressed L-1 Counselor, Smith & L-2 Case Manager, Frasier; about His property & investigation status. Plaintiff also addressed Merchant, Lt. Carey & Lt. McCullough about these issues.

62. SIS Merchant repeated that he would look into Plaintiffs issues, but informed Him that Proffitt did not answer to anybody besides Warden Drew.

63. Lt. McCullough took Plaintiff to the SHU Lt.'s office & let him speak with Noble over the speaker phone. In McCullough's presence, Noble told Plaintiff that he did not care about Plaintiffs photos or property, & that, sense Plaintiff did not cooperate with the investigation, Plaintiff had bigger problems, because He would be getting indicted along with Officer Eason.

64. Some time in late August, 2010, Plaintiff saw Captain Williams for the first time since being placed in SHU. Williams told Plaintiff that he could not transfer Him nor release Him to general population, because the United States Attorneys office had a detainer on Him. He also informed Plaintiff that he would find out why His photos & property was not mailed to His mothers house.

65. Sometime in late August, 2010, Plaintiff saw Warden Drew for the first time since being placed in SHU. Plaintiff spoke to Drew on 3 occasions, & on all 3 occasions, Drew told Plaintiff that he had no idea about anything that was going on with Plaintiffs investigation or property. The first time Plaintiff & Drew spoke, Drew told Plaintiff that he would look into Plaintiffs issues.

66. Counselor Smith & Case Manager Frasier told Plaintiff that His investigation was over their heads, & that nobody would tell them anything. They advised Plaintiff to file a tort claim on His missing & confiscated property from December 31, 2009, & a seperate tort claim for the lost property from His August 19, 2010 move from Coleman Low SHU to USP-2 SHU.

67. On or about October 11, 2010, Frasier gave Plaintiff a tort form to fill out for His missing & confiscated property from December 31, 2009. Plaintiff filled out the form & filed it the same day.

68. On or about October 27, 2010, Smith gave Plaintiff a tort form to fill out for the lost property from August 19, 2010. Plaintiff filled out the form, & filed it the same day.

11.

69. Even after Plaintiff filed both torts, he still filed administrative grievances to try to recover his property. Plaintiffs remedies were denied & rejected.

70. On or about January 20, 2011, SIS Gregory spoke to Plaintiff while he was in the recreation cage. Gregory informed Plaintiff that he was the liason between SIA & SIS, & that he was working closely to Plaintiffs investigation. He told Plaintiff that he would be the one to do Plaintiffs final interview & make all of the necessary recommendations. He said, at that point, nobody actually knew why Plaintiff was still being held in SHU, but he admitted that the institution had never prosecuted an officer before, so they weren't sure what to do with Plaintiff sense His investigation was related to that prosecution.

71. Gregory told Plaintiff that he read at least 2 of His requests about His property, but was unsure of what was going on with it. He said that he would look into it for Plaintiff.

72. On or about February 17, 2011, the "lost" property, from the August 19, 2010 return to USP-2 SHU, was found & returned to Plaintiff, only after Plaintiff filed a tort claim on it.

73. On or about March 3, 2011, Plaintiff learned, for the first time, that on July 15, 2010 His photos & other confiscated property was destroyed. Plaintiff received a letter, from Supervisory Attorney Zachary Kelton, informing His that His Tort claim had been denied on February 17, 2011.

74. On or about March 13, 2011, Plaintiff filed a request for reconsideration of His denied Tort claim. Based on the reasons for the denial of Plaintiffs tort claim, Plaintiff re-filed the exact same claim & attachments.

75. In early July, 2011, Kelton responded to Plaintiff again, informing His that His request for reconsideration was denied on June 23, 2011.

76. Upon information & belief, Proffitt destroyed Plaintiffs photos & property in retaliation for His non-cooperation in the investigation, & filing of grievances, & he did so with out providing Plaintiff with Due Process before such destruction.

VI CAUSE OF ACTION

Count I

PLAINTIFFS DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT WERE

VIOLATED BY SEIZING & DESTROYING PLAINTIFFS PROPERTY

77. Plaintiff incorporates paragraphs 1-76 as though they were stated fully herein.

78. The actions of Captain Williams, Proffitt, Noble & Shuler in destroying Plaintiffs photos & other property violated the rights of the Plaintiff to Due Process of the law under the fifth Amendment to the Constitution of the United States, which guarentees that prisoners are entitled to at least minimal procedural safeguards before they may be deprived of their property, thereby ensuring that their constitutional rights are not entirely abrogated.

79. Plaintiff is informed, believes, & therefore alleges that the actions of Williams, Proffitt, Noble & Shuler, in seizing & destroying Plaintiffs photos & other property without providing minimal procedural safeguards, which constituted a deliberate violation of Bureau of Prisons (BOP) policy statement 5580.07, was part of a pattern of conduct in violation of Plaintiffs rights.

80. Moreover, Williams, Proffitt, Noble & Shuler acted outside the scope of their agency, outside the pattern, practice/policy or custom of the BOP &/or in an intentional, malicious or corrupt manner in their dealings with this Plaintiff, & therefore, Williams, Proffitt, Noble, & Shuler, are personally liable for the violation of Plaintiffs rights.

81. Plaintiff has suffered injury, including irreparable injury, & damages as a direct proximate result of Williams, Proffitt, Noble & Shulers destruction of Plaintiffs photos & other property as alleged herein. These Defendants are jointly & severally liable to Plaintiff for all such damages in an amount of $339,475.75 (three hundred-thirty nine thousand, four hundred-seventy five dollars & seventy five cents) to be proven at trial.

## COUNT II

PLAINTIFFS DUE PROCESS RIGHTS WERE VIOLATED WITH GROSS

NEGLIGENCE & DELIBERATE IGNORANCE TO THE U.S. CONSTITUTION

& BOP'S ESTABLISHED POLICY — PROFFITT ONLY

82. Plaintiff incorporates by reference paragraphs 1-81 of this Complaint as if fully set out herein.

83. The conduct of Proffitt in destroying Plaintiffs photos & other property was purposeful & with knowledge that it constituted a breach of his duty to observe & honor the rights of others.

84. In addition, the actions of Proffitt were done needlessly, manifesting a conscious & reckless disregard of & deliberate indifference to the rights of others. The conduct of Proffitt amounted to gross negligence in the performance of his duties owed to Plaintiff.

85. As a direct & proximate result of Proffitts actions herein, Plaintiff has suffered damages for his missing property, as well as destroyed photos & other property as alleged herein. Proffitt is liable to Plaintiff for all such damages in an amount of $339,475.75 to be proven at trial.

## COUNT III

PLAINTIFFS DUE PROCESS RIGHTS WERE VIOLATED WITH GROSS

NEGLIGENCE & DELIBERATE IGNORANCE TO BOP's ESTABLISHED

POLICY INVOLVING DETENTION - All Defendants

86. Plaintiff incorporates by reference paragraphs 1-85 of this complaint as if fully set out herein.

87. The actions of Defendants in punishing Plaintiff for remaining silent in accordance with his fifth Amendment right, violated his Due Process rights, which guarentees that prisoners are entitled to at least minimal procedural safeguards before

they may be deprived of life, liberty & property, thereby ensuring that their constitutional rights are not entirely abrogated.

87. The actions of Defendants in punishing Plaintiff in violation of BOP's policy statement 5270.08 was outside the scope of their agency, outside the pattern, practice, policy or custom of the BOP, b/ac in an intentional, malicious or corrupt manner in their dealings with Plaintiffs & therefore, Defendants are personally liable for the violation of Plaintiffs rights.

89. The sanction of denying phone visits & continuous detention in SHU by the Defendants is in clear violation of the Fifth Amendment of the U.S. Constitution, which was a direct result of Plaintiff remaining silent, thereby manifesting a conscious & reckless disregard of, & deliberate indifference to Plaintiffs liberty interests in accordance with the Fifth Amendment.

90. Plaintiff has suffered injury, including irreparable injury, & damages as a direct & proximate result of Defendants continued deliberate ignorance of the Fifth Amendment & policy statement 5270.08 as alleged herein. Defendants are jointly & severally liable to Plaintiff for all such damages in the amount of $100,000.⁰⁰ each, to be proven at trial.

## COUNT IV

### PLAINTIFF WAS RETALIATED AGAINST IN VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION

91. Plaintiff incorporates by reference paragraph 1-90 of this complaint as if fully set out herein.

92. The actions of Drew, Oliver, Williams, Proffitt, Noble, Gregory, Sharaz, Carey, Adams, Moore & Kleckner in punishing Plaintiff for verbal & written grievances violated the rights of the Plaintiff in accordance with the First Amendment to the U.S. Constitution, which guarantees the right to petition the Government.

15.

93. Plaintiff is informed, believes & therefore allege that the actions of Defendants punishing Plaintiff for filing oral & written grievances was a deliberate violation of BOP's policy statement 1330.16 (Administrative Remedy Program) was part of a pattern of conduct in violation of Plaintiffs rights.

94. In addition, Defendants acted outside the scope of their agency, outside the pattern, practice, policy or custom of the BOP, &/or in an intentional, malicious or corrupt manner in their dealings with Plaintiff, & therefore Defendants are personally liable for the violation of Plaintiffs rights.

95. Plaintiff has suffered injury, including irreparable injury & damages as a direct result of Dedendants continued deliberate ignorance of Plaintiffs grievances, in violation of the First Amendment & policy statement 1330.16 as alleged herein. Defendants are jointly & severely liable to Plaintiff for all such damages in amount of $100,000.°° each to be proven at trial.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays this court:

A. Declare that the acts & omissions described herein violated Plaintiffs rights under the Constitution & laws of the United states;

B. Order Defendants to pay reasonable attorney fees & costs;

C. Order Defendants to pay punitive & nominable damages;

D. Grant other just & equitable relief that this Honorable Court deems necessary.


Respectfully Submitted,

Tavon Robinson
USP Pollock/P.O. Box 2099
Pollock, LA 71467

16

VERIFICATION

Pursuant to 28 USC 1746, I declare & verify under
penalty of perjury under the laws of the United States
of America that the foregoing is true & correct.
Executed on May 10, 2011

Toron Robinson

17

# Exhibit

# A"

1/ Plaintiff includes all adminstrative remedies, receipts, letters to Officers and confiscation forms.



**U.S. Department of Justice**
Federal Bureau of Prisons
*Federal Correctional Complex*
P.O. Box 1029
Coleman, Florida     33521-1029

**CERTIFIED MAIL**
**7009 1410 0000 9712 1619**

Tavon Robinson
Reg. No. 25182-038
FCC Coleman USP-2
P.O. Box 1034
Coleman, FL   33521

RE:       **Administrative Tort Claim Number TRT-SER-2011-00275**

Dear Claimant:

The Bureau of Prisons (BOP) has considered your administrative claim pursuant to 31 U.S.C. § 3723. This statute provides for the payment of claims which are "caused by the negligence of an officer or employee of the United States Government acting within the scope of their employment."   You are seeking monetary damages in the amount of $170,220.75 for an alleged property loss.   Specifically, you claim that on December 31, 2009, staff removed you from you cell, and transferred you to the FCC Coleman Low Special Housing Unit confiscating several items of personal property.

We have reviewed your claim along with reports from appropriate staff members.   The investigation conducted into this matter reveals the original confiscated property form was completed on January 3, 2010, for property belonging to you.   This form indicates the alleged items reported confiscated by you were confiscated on January 3, 2010.   Records show you refused to sign section 6 of the form of the form on February 2, 2010.   Section 6 of this form is the section where the inmate establishes ownership of the items confiscated.   You did not provide staff with an address of where you wanted the items to be mailed, as this is done in section 8 of the form.   You were provided a copy of the confiscation form on February 2, 2010.   In accordance with Program Statement 5580.07, *Inmate Personal Property*, staff confiscated the items considered to be contraband.   Since you failed to provide proof of ownership, the items were disposed of in accordance with policy.   The original confiscated property form indicates the items confiscated on January 3, 2010, were destroyed on July 15, 2010, in accordance with BOP Policy.

We have found no evidence to indicate that you have sustained an injury or loss caused by the negligent or wrongful act or omission of any Bureau of Prisons employee acting within the scope of his or her employment.   Your claim is, therefore, denied.

Please be advised that there is no judicial review for claims decided pursuant to 31 U.S.C. §

3723.   You may request, in writing, that the Bureau reconsider the claim.   Your request for reconsideration must be submitted within three months of the date of this letter.   You must include additional evidence of the damage or loss to support your request for reconsideration.

Sincerely,

Zachary J. Kelton,
Supervisory Attorney

2/17/11
Date

Tevon Robinson

25182-038

USP-2 / P.O. Box 1034

Coleman, FL 33521

March 7, 2011

Zachary J. Kelton, Supervisory Attorney.

U.S. Department of Justice

Federal Bureau of Prisons

Federal Correctional Complex

P.O. Box 1029

Coleman, FL 33521

RE: Administrative Tort Claim Number TRT-SER-2011-00275

Dear Attorney Kelton:

I AM requesting that the Bureau reconsider My claim, based on the following facts:

① I did not refuse to sign section 6 or 7 of the confiscation form, as you will see by the copy I provided w/ this letter. I filled out the form on 2·8·10 & had Case Manager Carbone (Coleman Low) forward it to SIA Proffitt through in-house mail. I also sent a copy to Proffitt through U.S. Postal mail on the same day.

② Proof of ownership was established through My signature on the confiscation form, the photo's being removed from My housing unit cell & locker, & I AM personally in many of the photo's.

③ Besides the items on the confiscation form, other items were also missing, & I provided proof of purchase for many of them w/ this letter also.

I have provided irrefutable evidence to support My claim, & hope that your office will honor it & My Personal property.

Respectfully Submitted,

Tavon Robinson
25182-038
USP-2 / P.O. Box 1034
Coleman, FL 33521

The appropriate staff to speak to are:

LT. Sharma
C.O. Shuler          — Coleman 1
Case Manager Carbide

LT. Corny  — Coleman-2



U.S. Department of Justice
Federal Bureau of Prisons
*Federal Correctional Complex*
P.O. Box 1029
Coleman, Florida   33521-1029

**CERTIFIED MAIL**
**7010 1870 0001 7446 7856**

Tavon Robinson
Reg. No. 25182-038
FCC Coleman CLP
P.O. Box 1034
Coleman, FL  33521

**RE:  Request for Reconsideration - Administrative Tort Claim No. TRT-SER-2011-00275**

Dear Claimant:

Your request for reconsideration has been considered for administrative settlement under Section 3723 of Title 31, which states that claims may be settled for not more than $1,000.00 for damage to, or loss of, privately owned property that is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment.

You were notified of the denial of the above administrative claim via a certified letter dated February 17, 2011.  Our initial investigation revealed the original confiscated property form was completed on January 3, 2010, for property belonging to you.  This form indicates the alleged items reported confiscated by you were confiscated on January 3, 2010.  Records show you refused to sign section 6 of the form of the form on February 2, 2010.  Section 6 of this form is the section where the inmate establishes ownership of the items confiscated.  You did not provide staff with an address of where you wanted the items to be mailed, as this is done in section 8 of the form.  You were provided a copy of the confiscation form on February 2, 2010.  In accordance with Program Statement 5580.07, *Inmate Personal Property*, staff confiscated the items considered to be contraband.  Since you failed to provide proof of ownership, the items were disposed of in accordance with policy.  The original confiscated property form indicates the items confiscated on January 3, 2010, were destroyed on July 15, 2010, in accordance with BOP Policy.

A second review of your claim and the new documentation you submitted did not reveal any new information.  The copy of the Confiscated Property form which now shows your signature and an address where the confiscated items were to be sent reveals the form was clearly altered from the original form.  You failed to provide any additional information or evidence to substantiate your claim.

Based on our review of file information regarding the reinvestigation of your claim, and your request for reconsideration, we have determined you did not raise any issues which would cause our initial decision to change.  Therefore, we reaffirm the previous denial of your claim.  You are advised that no further administrative action is available for claims reconsidered pursuant to Title 31 U.S.C. § 3723.  Further, there is no judicial review for claims decided pursuant to this statute.

Sincerely,

Zachary J. Kelton
Supervisory Attorney

6/23/11
Date

Tavon Robinson
25182-038
Coleman Low/ P.O. Box 1031
Coleman, FL 33521

October 16, 2011

Southeast Region
Building 2000
3800 Camp Creek Parkway, SW
Atlanta, GA 30331-6226



Dear Sir/Madam:

I AM submitting My tort claim, in a timely fashion, on the proper form (Standard Form 95). My claim is for far more than $1,000.⁰⁰, so it does not qualify to be filed as "Small Claims for Property Damage or Loss" under 31 USC 3723. My initial claim was wrongfully filed under 3723, thus I expect your office to file it properly this time.

Respectfully Submitted,

Tavon Robinson.

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| Southeast Region<br>Building 2000<br>3800 Camp Creek Parkway, SW<br>Atlanta, GA 30331-6226 | Tavon Robinson<br>25182-038<br>Coleman Low/P.O. Box 1031<br>Coleman, FL 33521 |

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☐ CIVILIAN | 4. DATE OF BIRTH<br>2-24-79 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>December 31, 2009 | 7. TIME (A.M. OR P.M.)<br>Aprox 4PM |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.) I was removed from my cell at USP-2 Coleman, & transfered to Coleman Low SHU. I did not receive my property until the first week of February, 2010. More than half of my property was missing, & I was informed by Lieutenant Pritchard that SIA was holding some of my property for investigation. Property officer Shuler made a copy of the confiscation form that came w/ my property & told me to fill it out & send it to SIA Proffitt w/in a week. (see continuation Pg.)

**9. PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

See Section #2

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED (See instructions on reverse side). Food, Clothing, Photos, Electronics

(see continuation Pg.)

**10. PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

NONE

**11. WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| SIA Proffitt, SIA Noble, Lt. Brown<br>Lt. Corey | USP-2, P.O. Box 1034<br>Coleman, FL 33521 |
| C.O. Shuler, C.O. Gully, Lt. Sharma<br>Lt. Pritchard, Case manager carbone | Coleman Low, P.O. Box 1031<br>Coleman, FL 33521 |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (in dollars) | | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE<br>$339,475.75 | 12b. PERSONAL INJURY<br>None | 12c. WRONGFUL DEATH<br>None | 12d. TOTAL (Failure to specify may cause forfeiture of your rights)<br>Three-hundred-thirty-nine thousand, Four hundred-seventy-five dollars-seventy-five cents | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side) | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE<br>10/6·11 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| Authorized for Local Reproduction<br>Previous Edition is not Usable<br>95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 (REV. 2/2007)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number  ☑ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☑ No   17. If deductible, state amount

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts)

*NONE*

19. Do you carry public liability and property damage insurance? ☐ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code)  ☑ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the Incident. If the incident involves more than one claimant, each claimant should submit a seperate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

STANDARD FORM 95 REV (2/2007) BACK

continuation page
Section #8

I filled out the confiscation form & sent it to SIA Proffitt, through U.S. Postal Mail & Institution Mail, on 2·8·10. I also gave a copy to Casemanager Carbone to forward to Proffitt, & I gave a copy to property officer to be placed in My file. I also had an Attachment w/ the confiscation form expressing My concern w/ how My investigation & property was being handled. I checked w/ My Family, on numerous occasions, to see if they received My confiscated property, & when they told Me they didn't, I filed "sensitive" Administrative Remedies (BP 10 & 11) concerning the issue to no avail (Remedy-ID #'s 585639-R1, 585639-A1). All of the above was initiated well before 7·15·10, which is the date that staff at USP-2 claims to have destroyed My personal property. Besides the items from My confiscation form, I'M also missing other items.

Section #9

Missing Items include : ③ six-pack soda ; ① Sweat shirt ; ① Sweat Pants ; Timberland Boots ;
$4.75     $18.00     $20.00     $100.00
⑩ Mackerel ; ⑩ Tuna Fish ; ① Sony Walkman ; ① Koss Headphones ; Legal
$12.50     $12.50     $88.00     $32.00
Work (approx 500 pgs.) = $500.00 ; (30) candy ; ⑥ Books/Phone book ;
$30.00          $150.00
(586) Personal photos ... amongst My Personal photos are memories frozen in time, which I can never get back (Child hood, old neigh-borhoods, college, deceased loved ones, My children, etc). These memories are priceless, & the unnecessary loss of them has caused Me extreme Mental & emotional suffering. Based on My pain & suffering, as well as actual cost of some photos, I AM seeking a settlement of $100.00 for each purchased photo (275 photos), & $1,000.00 for each Personal memory (311 Photos).
Total sum (non photo) = $970.75 . Photo Sum = $338,500.00
Total sum of claim = $339,475.75 .

BP-S402.058   CONFISCATION AND DISPOSITION OF CONTRABAND   CDFRM
AUG 94
U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

Signature/Printed Name of Staff Member Confiscating Property     Institution
SPO/ Scott H.                                                    FCC COLEMAN PEN II

| 1. Name: T. ROBINSON | 2. Register No. 25182-038 | 3. Unit: | 4. Date 1/3/10 |

5. The contraband listed below was found in possession of, or in the living quarters of the above
named inmate on 12/31/09 _____. (Make a numerical list of contraband)

6. (TO be completed by inmate) I have received a list of those items confiscated as contraband. I
claim ownership of the following items (identify by number from section 5 above):
Nos. 1,2,3,4,5,6 _____. I am aware that a claim of ownership will not be accepted for any
item of government property. With respect to my claimed personal property, I am aware that I
have 7 days from receipt of this inventory to provide staff with evidence of my ownership of
the claimed items. ① CLEAR IN COLOR SONY WALKMAN HAVING NO REG. NO. ETCHED
ON IT ② 586 PHOTO ③ CLEAR IN COLOR SONY WALKMAN W/NO REG. NO.
I, _____ received a copy of this inventory
⑤139 FOREVER STAMPS (inmate's signature) ④ HOBBYCRAFT WALKMAN POUCH ⑥ 4,444 STAMPS       2·8·10
                                                                                      (date)

7. Of the contraband listed in section 5 above, the inmate has established ownership for the
following (identify by number from section 5 above): Nos. 1,2,3,4,5,6 . The contraband, other than hard
contraband, may be mailed at the inmate's expense to a destination
of the inmate's choice. The institution may pay for the mailing when the inmate has insufficient
funds and no likelihood of receiving new funds. Where the inmate is financially able to pay
postage, but refuses, or fails to provide a mailing address for return of the property, the
confiscated property will be disposed of through approved means, including destruction of the
property.

I have read or had read to me the above information. I request the following action be taken in
regards to my contraband property:
    (items a,5 $ 6)
a.  I request the property be mailed to: Brenda Robinson, 480 Lonsdale Av #3, Pawtucket, RI 0286(
                            . I agree to pay all mailing costs.
Inmate's
Signature: _____                          Date: 2·8·10

b.  I request the institution to pay mailing costs. I have insufficient funds in my institution
account and do not expect to receive new funds. (The approval of the Warden or designee is
required for the institution to pay postage).
Inmate's
Signature: _____                          Date: _____

c. ___ Other (specify, e.g., donate to institution)

Inmate's
Signature: _____                          Date: _____

8. The following contraband (identify by number from section 5 above) has been determined to be
hard contraband for which no ownership has been established. The contraband has been disposed
of by (indicate disposition/reason):
Nos. _____

| Signature/Printed Name of Staff Member Determining Method of Disposal | Date |
| Signature/Printed Name of Staff Disposing of Property | Date |
| When Property is Destroyed, Signature/Printed Name of Staff Witness | Date |

Record copy - Central File; copy - Captain; Inmate Systems Manager; Inmate
This form may be replicated via WP)

                                        Replaces BP-402(58) of JAN 83

1

SIA Proffitt:                                                                                    2·8·10

I received My property, on 2·5·10, w/ this Confiscation Form attached. My first issue is, I did not receive the most important half of My property, which consists of approximately 1500 pages of legal work, & 500 pages of Personal papers. That paperwork, amongst other things (clothing, books, food, etc.). My second issue is you confiscated My address book (w/out documenting it), & you're currently confiscating select pieces of My incoming · & possibly out-going · mail, without sending Me the mailroom confiscation/rejection Form. Third, you claim you confiscated 586 photos (#2 on Confiscation Form), but all of My photo albums & envelopes are empty of the photos that were in them, & I had 637 photos. Also, I am allowed to have 25 photos, so you're in violation for taking all of them.

Fourth, The clear Sony walkman (#1) is documented on My commisary pur-chase, somewhere between August & September of 2007. Commisary in this in-stitution does not etch reg. no.'s in walkmans, headphones or hair clippers. My other walkman (#3) is documented in My July 10, 2007 property receipt. FCI Schuylkill also did not etch reg. no.'s in walkmans. You need to take that policy up w/ commissary staff, because I don't know how to get tools in order to etch My reg. no. in items.

Fifth, if you plan on ignoring My rights to My Personal items, that I purchased in the BOP, I want you to mail #'s 2, 5 & 6 to the address provided in the confiscation Form (section 7a). Due to the copy of the confiscation Form, made by property officer Shuler (at Coleman Law), the number that I assume to Be #5, in section 6 has been left off the page. To Be clear, I am referring to the 139 forever stamps, that I purchased in the BOP (USP2), as item #5.

I want items #'1 & 3 held, because I am going to appeal your confiscation.

I filed a "sensitive BP-9" w/ the Southeast Region about this situation, as well as others concerning the way SIA & other staff members are handling this so-called investigation against Me. I also mailed a BP 8 & 9 to the unit team in this institution & Pen-2, in regards to this situation, as well as others dealing w/ this investigation.

All I ask is that you play fair & stop being petty. This whole thing will Be over one day, & one side will win & one will lose. In between that time, please stop making it a personal vendeta. I never disrespected you or your staff, nor targeted any of yall for any kind of harm, so please respect Me & My possessions.

Respectfully

Tavon Robinson
25182-038
Coleman Low/ P.O. Box 1031
Coleman, FL 33521

ControlledItemsCombined

## Controlled Items

| Inmate Reg #: | 25182038 | Current Institution: | Coleman FCC |
| Inmate Name: | ROBINSON, TAVON | Housing Unit: | CLP-Z-A |
| Report Date: | 11/25/2010 | Living Quarters: | Z05-202LAD |
| Report Time: | 7:39:34 AM | | |

| Date | Purchased Location | Description | | Quantity |
|------|-------------------|-------------|------|----------|
| 8/9/2007 | COA | SIZE 10.5 REEBOK CLASSIC NYLON | | 1 |
| | | | Subtotal: 35.00 | 1 |
| 7/25/2007 | COA | 4030006 MNS IRNMN WTCH | | 1 |
| | | | Subtotal: 45.00 | 1 |
| 2/9/2006 | SCH | ADIDAS STAR 10 | | 0 |
| | | ADIDAS STAR 10.5 | | 1 |
| | | | Subtotal: 65.00 | 1 |
| 11/17/2005 | SCH | SHOWER SHOES / 2X | | 1 |
| | | | Subtotal: 35.00 | 1 |
| 8/30/2005 | SCH | BOOT/COMPOSITE TOE | | 1 |
| | | | Subtotal: 100.00 | 1 |
| 7/11/2005 | SCH | NIKE AIR FORCE 1 | | 1 |
| | | | Subtotal: 85.00 | 1 |
| | | | Grand Total: 365.00 | 6 |

BP-A383.058
SEP 05

**INMATE PERSONAL PROPERTY RECORD** CDFRM

**U.S. DEPARTMENT OF JUSTICE**        **FEDERAL BUREAU OF PRISONS**

| Institution CLP USP-2 Colman | 1. Name: Robinson, Tevon | |
|---|---|---|
| 2. Register No. 25782-038 | 3. Unit: L-2 | 4. Date & Time of Inventory: 7/31/09, 1239pm |

5 Purpose of Inventory (Check that applies) Date and Time of Action _____

   a. ___ Admission    b. ___ Hospital    c. ___ Writ    d. ___ Transfer    e. ✗ Detention

   f. ___ Release    g. ___ Incoming Package    h. ___ Other (specify) _____

6. Disposition (Disp.)
D–Donated    M–Mail    S–Storage
K–Keep in Possession
C–Contraband (Attach BP-S102)

7. Type of Property:

| a. Personally Owned Items # Article | Disp. | # Article | Disp. | b. Hygiene, etc. # Article | Disp. | d. Food/Tobacco Items # Article | Disp. |
|---|---|---|---|---|---|---|---|
| Batteries | | Plastic spoon, cup | | Dental Floss | | Chewing tobacco | |
| Belt | | Playing Cards | | Dentures | | Snuff | |
| Billfold | | Purse | | Deodorant | | Coffeemate | |
| Books, Reading hard ___ soft ___ | | Radio (w/earplug) | | Hair oil | | 4 Cold drink mix, soda → 2 cans | |
| Books, Religious hard 2 Soft ___ | | Religious Medal | | Noxema | | Fruit | |
| Brassiere | | Ring | | Powder | | Honey, Hi-protein | |
| Cap, Hat | | 4 Shirt/Blouse | | Razor | | Instant chocolate | |
| Coat | | Shoes | | Shampoo | | Instant coffee | |
| Coins | | 1 Shoes, shower | | Shaving lotion | | 5 (beef sausy) | |
| Comb | | Shoes, Slippers | | Skin lotion | | 4 Honey | |
| Combination Lock | | Shoes, Tennis | | 1 Soap dish | | 1 peanut butter (packet) | |
| Dress | | Shorts | | Toothbrush | | | |
| Driver's License | | Skirt | | Toothpaste | | | |
| Earplugs | | Slip | | 1 electric razor | | | |
| Eyeglass case | | Social Security Card | | | | | |
| Eyeglasses | | 4 Socks | | | | | |
| Gloves | | Socks, Athletic | | | | | |
| Hairbrush/Pick | | Stamps | | | | e. Miscellaneous (List any damaged property and from where it was received; e.g. U.S. Marshal) | |
| Handkerchief | | Stockings | | | | | |
| Jacket | | Sunglasses | | | | | |
| Jogging Suit | | Sweater | | | | | |
| Legal Materials | | 1 Sweat pant | | c. Hobby craft | | | |
| Letters | | Sweat Shirt | | | | | |
| Magazines | | Trophy | | # Article | Disp. | | |
| Mirror | | T-Shirts | | | | | |
| Nail Clippers | | 4 Underwear | | | | | |
| 1 Pant/Slacks | | Watch/Watchband | | | | | |
| Pen Ballpoint | | 1 Towel | | | | | |
| Pencils | | 2 photo album | | | | | |
| Personal Papers | | 1 belt | | | | | |
| Photo Album | | | | | | | |
| Photo | | | | | | | |

8. Items Alleged by Inmate to Have Value Over $100.00

| Description of Property | Value Alleged by Inmate |
|---|---|
| None | |

✗ No individual item over $100.00

9. Article(s) listed as "Mail" (M) Are to be forwarded to (Name and Address of Consignee):

10. Claim Release: a The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify it's accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve the discrepancy. If the inmate states there is missing or damaged property, this information should be noted under COMMENTS.

COMMENTS:

Printed Name/Signature of Receiving Officer: missing intake property C. _____ Date: 13 Aug 09 Time: 1240

I have today reviewed the property returned to me. _____ Signature of Inmate / Register # / Date / Time

b. Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve the discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under COMMENTS.

COMMENTS:

Printed Name/Signature of Receiving Officer: _____ Date: 8/13/09 Time: 12:48

I have today reviewed the property returned to me. _____ 25782-038 8/13/09 12:48
     Signature of Inmate / Register # / Date / Time

Original: Central File; Copy: Inmate, R&D, Special Housing
(This form may be replicated by WP)

Replaces of BP-S383 of AUG 94

Unsecure Locker

BP-A383.058
SEP 05

**INMATE PERSONAL PROPERTY RECORD** CDFRM

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| Institution: FCC Coleman USP II | 1 Name: Robinson, Tavon |
|---|---|
| 2. Register No: 25182-038 | 3. Unit: L-1 | 4. Date & Time of Inventory: 11/02/09   11:00 |

5. Purpose of Inventory (Check one that applies): Date and Time of Action: _____

a. __ Admission   b. __ Hospital   c. __ Writ   d. __ Transfer   e. X Detention

f. __ Release   g. __ Incoming Package   h. __ Other (specify) _____

6. Disposition (Disp.)
D-Donated   M-Mail   S-Storage
K-Keep in Possession
C-Contraband (Attach BP-S102)

7. Type of Property:

**a. Personally Owned Items**

| # Article | Disp. |
|---|---|
| __ Batteries | __ |
| __ Belt | __ |
| · __ Billfold | __ |
| __ Books, Reading hard ___ soft ___ | __ |
| __ Books, Religious hard ___ Soft ___ | __ |
| __ Brassiere | __ |
| I Cap, Hat | __ |
| __ Coat | __ |
| __ Coins | __ |
| __ Comb | __ |
| __ Combination Lock | __ |
| __ Dress | __ |
| __ Driver's License | __ |
| __ Earplugs | __ |
| __ Eyeglass case | __ |
| __ Eyeglasses | __ |
| __ Gloves | __ |
| __ Hairbrush/Pick | __ |
| __ Handkerchief | __ |
| __ Jacket | __ |
| __ Jogging Suit | __ |
| __ Legal Materials | __ |
| __ Letters | __ |
| __ Magazines | __ |
| __ Mirror | __ |
| __ Nail Clippers | __ |
| __ Pant/Slacks | __ |
| __ Pen/Ballpoint | __ |
| __ Pencils | __ |
| __ Personal Papers | __ |
| __ Photo Album | __ |
| __ Photo | __ |

| # Article | Disp. |
|---|---|
| __ Plastic spoon, cup | __ |
| __ Playing Cards | __ |
| __ Purse | __ |
| __ Radio (w/earplug) | __ |
| __ Religious Medal | __ |
| __ Ring | __ |
| __ Shirt/Blouse | __ |
| __ Shoes | __ |
| __ Shoes, shower | __ |
| __ Shoes, Slippers | __ |
| __ Shoes, Tennis | __ |
| I Shorts | __ |
| __ Skirt | __ |
| __ Slip | __ |
| __ Social Security Card | __ |
| 3 Socks | __ |
| __ Socks, Athletic | __ |
| __ Stamps | __ |
| __ Stockings | __ |
| __ Sunglasses | __ |
| __ Sweater | __ |
| __ Sweat pant | __ |
| I Sweat Shirt | __ |
| __ Trophy | __ |
| I T-Shirts | __ |
| __ Underwear | __ |
| __ Watch/Watchband | __ |

**b. Hygiene, etc.**

| # Article | Disp. |
|---|---|
| __ Dental Floss | __ |
| __ Dentures | __ |
| I Deodorant | __ |
| __ Hair oil | __ |
| __ Noxema | __ |
| __ Powder | __ |
| __ Razor | __ |
| __ Shampoo | __ |
| __ Shaving lotion | __ |
| __ Skin lotion | __ |
| __ Soap dish | __ |
| I Toothbrush | __ |
| 2 Toothpaste | __ |
| I pack cotton swabs | __ |

**c. Hobby craft**

| # Article | Disp. |
|---|---|
| I Patriots cloth | __ |
| 3 batery packs | __ |
| I razor gaurd | __ |
| I tube oral gel | __ |
| I clipper oil | __ |
| 6 boss zunes | __ |
| I printed ribbon | __ |

**d. Food/Tobacco items**

| # Article | Disp. |
|---|---|
| __ Chewing tobacco | __ |
| __ Snuff | __ |
| __ Coffeemate | __ |
| __ Cold drink mix, soda | __ |
| __ Fruit | __ |
| __ Honey, Hi-protein | __ |
| __ Instant chocolate | __ |
| __ Instant coffee | __ |

e. Miscellaneous (List any damaged property and from where it was received; e.g. U.S. Marshal)

| # Article | Disp. |
|---|---|
| I Shilly | __ |
| I religious skully | __ |
| I necklace w/ metal | __ |
| I wrist band | __ |
| I head band | __ |
| 2 towels | __ |
| I thermal top | __ |
| 2 tank tops | __ |

8. Items Alleged by Inmate to Have Value Over $100.00   misc. & legal mail

| Description of Property | Value Alleged by Inmate |
|---|---|
| | |
| | |
| | |

X No individual item over $100.00

9. Article(s) listed as "Mail" (M) Are to be forwarded to (Name and Address of Consignee):

10. Claim Release: a. The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify it's accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve the discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under COMMENTS.

COMMENTS:

Printed Name/Signature of Receiving Officer: _____   Date: 11/1/09   Time: ____

I have today reviewed the property returned to me. _____
Signature of Inmate   Register #   Date: 11/1/09   Time

Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, kept as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve the discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under COMMENTS.

COMMENTS:

Printed Name/Signature of Receiving Officer: _____   Date: 11/1/09   Time: ____

I have today reviewed the property returned to me. _____
Signature of Inmate   Register #   Date: 11/4/09   Time

Original: Central File: Copy: Inmate, R&D, Special Housing
(This form may be replicated by WP)

Replaces of BP-S383 of AUG 94

BP-A383.058
SRP 05

**INMATE PERSONAL PROPERTY RECORD**   CDFRM

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| Institution: FCC COLEMAN USP2 | 1 Name: ROBINSON TAVON |
|---|---|
| 2. Register No: 25182-038 | 3 Unit: C1 | 4. Date & Time of Inventory: 7-10-07 / 2:40fm |

5.   Purpose of Inventory (Check that applies): Date and Time of Action: 7/10/07/2:40P.m

a. ___ Admission     b ___ Hospital     c. ___ Writ     d. ___ Transfer     e. ___ Detention

f. ___ Release     g. X Incoming Package     h. ___ Other (specify) _____

6. Disposition (Disp.)
D-Donated     M-Mail     S-Storage
K-Keep in Possession
C-Contraband (Attach BP-S102)

7. Type of Property:

| # a. Personally Owned Items / Article | Disp. | # / Article | Disp. | b Hygiene, etc. # / Article | Disp. | d. Food Tobacco Items # / Article | Disp. |
|---|---|---|---|---|---|---|---|
| ___ Batteries | ___ | ___ Plastic spoon, cup | ___ | ___ Dental Floss | ___ | ___ Chewing tobacco | ___ |
| ___ Belt | ___ | ___ Playing Cards | ___ | ___ Dentures | ___ | ___ Snuff | ___ |
| ___ Billfold | ___ | ___ Purse | ✗ | ___ Deodorant | ___ | ___ Coffeemate | ___ |
| ___ Books, Reading hard ___ soft ___ | ___ | ___ Radio (w/earplug) | ✗ | ___ Hair oil | ___ | ___ Cold drink mix, soda | ___ |
| ✗ Books, Religious hard ___ Soft X | ✗ | ___ Religious Medal | ___ | ___ Novemo | ___ | ___ Fruit | ___ |
| ___ Brassiere | ___ | ___ Ring | ___ | ___ Powder | ___ | ___ Honey, Hi-protein | ___ |
| ___ Cap, Hat | ___ | ___ Shirt/Blouse | ___ | ___ Razor | ___ | ___ Instant chocolate | ___ |
| ___ Coat | ___ | ___ Shoes | ___ | ___ Shampoo | ___ | ___ Instant coffee | ___ |
| ___ Coins | ___ | ___ Shoes, shower | ___ | ___ Shaving lotion | ___ | | |
| ___ Comb | ___ | ___ Shoes, Slippers | ✗ | ___ Skin lotion | ✗ | | |
| ✗ Combination Lock | ✗ | ___ Shoes, Tennis | ✗ | ___ Soap dish | ___ | | |
| ___ Dress | ___ | ___ Shorts | ___ | ___ Toothbrush | ✗ | | |
| ___ Driver's License | ___ | ___ Skirt | ___ | ___ Toothpaste | ___ | | |
| ___ Earplugs | ___ | ___ Slip | ___ | | | | |
| ___ Eyeglass case | ___ | ___ Social Security Card | ___ | | | e. Miscellaneous (List any damaged property and from where it was received; e.g. U.S. Marshal) | |
| ___ Eyeglasses | ___ | ___ Socks | ___ | | | | |
| ___ Gloves | ___ | ___ Socks, Athletic | ___ | | | | |
| ✗ Hair/comb Pick | ✗ | ___ Stamps | ___ | | | | |
| ___ Handkerchief | ___ | ___ Stockings | ___ | | | | |
| ___ Jacket | ___ | ___ Sunglasses | ___ | | | | |
| ___ Jogging Suit | ___ | ___ Sweater | ___ | | | | |
| ✗ Legal Materials | ✗ | ___ Sweat pant | ✗ | | | | |
| ___ Letters | ___ | ___ Sweat Shirt | ✗ | c. Hobby craft | | | |
| ___ Magazines | ___ | ___ Trophy | ___ | # / Article | Disp. | | |
| ___ Mirror | ___ | ___ T-Shirts | ___ | | | | |
| ___ Nail Clippers | ___ | ___ Underwear | ___ | | | | |
| ___ Pant/Slacks | ___ | ___ Watch/Watchband | ✗ | | | | |
| ___ Pen/Ballpoint | ___ | ✗ Book | ✗ | | | | |
| ___ Pencils | ___ | ✗ | ___ | | | | |
| ___ Personal Papers | ___ | ✗ | ___ | | | | |
| ✗ Photo Album | ✗ | ✗ Soes Tennis | ✗ | | | | |
| ✗ Photo | ___ | | | | | | |

8. Items Alleged by Inmate to Have Value Over $100.00
Description of Property:                    250-G, 2499,                    Value Alleged by Inmate

✗   TR

An individual item over $100.00

9. Article(s) listed as "Mail" (M) Are to be forwarded to (Name and Address of Consignee):

10. Claim Release: a. The receiving officer, as soon after receipt of the property as possible, will review the inventory with the inmate to verify it's accuracy. Property that is stored, kept in possession of the inmate, mailed out of the institution, or donated is to be marked in the appropriate section of this inventory form. The receiving officer certifies receipt, review and disposition of the property by signing below. The inmate by signing below certifies the accuracy of the inventory, except as noted on the form, relinquishing of all claim to articles listed as donated, receipt of all allowable items, and receipt of a copy of the inventory. When the inmate claims a discrepancy in the inventory, the receiving officer shall attempt to resolve the discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under COMMENTS.

COMMENTS.

Printed Name/Signature of Receiving Officer: _____   Date: 7-10-07   Time: 2:55fm

I have today reviewed the property returned to me. _____ Signature of Inmate   Register #: 25182-038   Date: 7-10-07   Time: 2:55fm

b. Upon release of the inmate from the unit, detention, etc., the releasing officer is to give the inmate that property stored as a result of the inmate's housing. The inmate certifies release of the property, except as noted on this form, and receipt of a copy of the inventory by signing below. When the inmate claims a discrepancy in the inventory, the releasing officer shall attempt to resolve the discrepancy. If the inmate states that there is missing or damaged property, this information should be noted under COMMENTS.

COMMENTS.

Printed Name/Signature of Receiving Officer: _____   Date: _____   Time: _____

I have today reviewed the property returned to me. _____ Signature of Inmate   Register # _____   Date _____   Time _____

Original: Central File; Copy: Inmate, R&D, Special Housing
(This form may be replicated by WP)                                    Replaces of BP-S383 of AUG 94

```
CLP3S          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *    07-21-2011
PAGE 003 OF 003 *              SANITIZED FORMAT              *    08:48:55

REMEDY-ID     SUBJ1/SUBJ2  -------------------ABSTRACT---------------------
              RCV-OFC     RCV-FACL     DATE-RCV      STATUS    STATUS-DATE

585639-R1     22ZS/       REQUEST INVESTIGATION WHILE IN SHU
              SER          COL         04-15-2010      REJ      04-15-2010

585639-A1     22ZS/       REQUEST INVESTIGATION WHILE IN SHU
              BOP          COL         05-10-2010      REJ      05-25-2010

616666-F1     25DS/       ALLEGES STAFF @COL & CLP LOST HIS PROPERTY.
              CLP          CLP         11-29-2010      CLD      12-21-2010

621520-R1     25DM/       REQUEST TO RECEIVE PROPERTY
              SER          CLP         01-06-2011      REJ      01-07-2011

616666-R1     25DS/       ALLEGES STAFF @COL & CLP LOST HIS PROPERTY.
              SER          CLP         01-14-2011      REJ      01-14-2011

623663-F1     22AS/       WANTS RELEASE FROM SHU TO GEN POP OR TRANSFERRED
              CLP          CLP         01-25-2011      CLD      02-23-2011

616666-R2     25DS/       ALLEGES STAFF @COL & CLP LOST HIS PROPERTY.
              SER          CLP         02-07-2011      REJ      02-16-2011

623663-A1     22AS/       WANTS RELEASE FROM SHU TO GEN POP OR TRANSFERRED
              BOP          CLP         03-28-2011      REJ      04-26-2011

623663-R1     22AS/       WANTS RELEASE FROM SHU TO GEN POP OR TRANSFERRED
              SER          CLP         06-07-2011      REJ      06-09-2011

646961-R1     34EM/       REQUEST RELEASE FROM SHU/PROTECT FROM INMATES
              SER          CLP         07-06-2011      REJ      07-08-2011




                    26 REMEDY SUBMISSION(S) SELECTED
      G0000     TRANSACTION SUCCESSFULLY COMPLETED
```

**U.S. DEPARTMENT OF JUSTICE**   "Sensitive"   **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Robinson  Tavon      25182-078      L-1      Coleman USP-2
　　　LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A- INMATE REQUEST** I've been under investigation since December 31,2009, & was told by the SHU Lieutenant that it was renewed at the end of the 90 day period. I was under SIA, now I've been told that OIA has the investigation. NOBODY on this complex will tell me anything about the investigation, but I have recieved "warnings" to cooperate w/ DOJ & DEA, to which I have refused. My property was taken by SIA Officer Proffitt, I filled out the confiscation form, but he never sent my property out, & told my case manager to "talk to someone else." I've also been stript of Phone & visit privileges due to this investigation. My request is simple; Please make sure that my investigative process is dealt w/ fairly, & that I am safe in this institution. I feel like I am being set up by staff members. Sense this is a "sensitive request" I am keeping the second page carbon copy, because my mail has not been getting to its' destination- even legal mail. If I do not hear from your office, I'll File w/ the Office of general counsel, & send the carbon copy of this, on 5-3-10.

4-11-10
DATE                          SIGNATURE OF REQUESTER

**Part B- RESPONSE**

RECEIVED APR 15 2010

DATE                          WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE     CASE NUMBER: _____

CASE NUMBER: _____

**Part C- RECEIPT**
Return to: _____
　　　LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

DATE          RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982
USP LVN

**U.S. Department of Justice**

Federal Bureau of Prisons

"Sensitive"

**Central Office Administrative Remedy Appeal**

---

Type or use ball-point pen.  If attachments are needed, submit four copies.  One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Robinson, Tyree _____ 25182-028 _____ L-1 _____ Coleman USP-1
　　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　　REG. NO.　　　　UNIT　　　INSTITUTION

**Part A—REASON FOR APPEAL** My request is simple & not unreasonable; more importantly, contrary to the SE Regions conclusion, this is very "sensitive." Please consult w/ whom ever is in charge of my so-called "G-14" classified investigation & make sure it is being conducted fairly & properly. I do not feel safe, due to threats by SIA & lack of communication w/ all staff at USP-1. I recieved two pieces of mail in April, but my family has written me once a week. They also aren't recieving my mail. I have been having to use another inmates name to get any mail in or out. I filled out the address requirement on the SIA confiscation forms for the property they took, but it never got sent to the address. I have no phone or visits while this investigation is pending. I'm accused of being connected t/a C.O., who has already been arrested, & I've been threatened w/ an indictment because I refuse to speak w/ agents. There's no investigating to do, they need to indict me or get me out of this facility like they will eventually, regardless to an indictment or not. I'm trying to stay shot free in this SHU, but staff are constantly provoking me to lash out. Please just check up this situation.  Thank You.

5-2-10 _____　　　　　　　　　_____
　　　DATE　　　　　　　　　　　　　　　　　SIGNATURE OF REQUESTER

---

**Part B—RESPONSE**




_____ DATE　　　　　　　　　　　　　_____ GENERAL COUNSEL

FIRST COPY: WASHINGTON FILE COPY　　　　　　　CASE NUMBER: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Part C—RECEIPT**

CASE NUMBER: _____

Return to: _____
　　　　　LAST NAME, FIRST, MIDDLE INITIAL　　　REG. NO.　　　UNIT　　　INSTITUTION

SUBJECT: _____


_____ DATE　　　　　SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL　　　BP-231(13)

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JANUARY 14, 2011

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : TAVON ROBINSON, 25182-038
      COLEMAN II USP    UNT: L-1    QTR: Z05-223LAD
      P.O. BOX 1024
      COLEMAN, FL 33521

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 616666-R1       REGIONAL APPEAL
DATE RECEIVED  : JANUARY 14, 2011
SUBJECT 1      : PERSONAL PROPERTY - INCL. CONFISCATION OR DESTRUCTION
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT SUBMIT YOUR REQUEST OR APPEAL ON THE PROPER
                 FORM (BP-9, BP-10, BP-11) (CIRCLE ONE)

REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 10 DAYS OF THE DATE OF THIS REJECTION NOTICE.

RECEIVED FEB -7 2011

C.224

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: FEBRUARY 16, 2011

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : TAVON ROBINSON, 25182-038
      COLEMAN II USP    UNT: L-1    QTR: Z05-222LAD
      P.O. BOX 1024
      COLEMAN,  FL 33521


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 616666-R2         REGIONAL APPEAL
DATE RECEIVED   : FEBRUARY 7, 2011
SUBJECT 1       : PERSONAL PROPERTY - INCL. CONFISCATION OR DESTRUCTION
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 10 DAYS OF THE DATE OF THIS REJECTION NOTICE.

REJECT REASON 2: SEE REMARKS.

REMARKS         : ALL PAGES OF BP-10 FORM MUST BE LEGIBLE.


2-25-11
H. C. Carey

**FCC Coleman**
**BP-9 Response**

CASE NUMBER:616666-F1

This is in response to your Request for Administrative Remedy received in this office on November 29,2010, in which you state on December 31, 2009, staff were negligent in processing your personal property when you were placed in Administrative Detention at FCC-Coleman, Low.  You also allege staff at FCC-Coleman, Low misplaced all of your personal property when you were returned to USP-2 Coleman on August 19, 2010.

A review of this matter revealed you have submitted a Tort Claim regarding the items you list as missing on December 31, 2009. This claim is currently being investigated and you will be advised of the outcome.  Additionally, we are currently searching each property room in attempt to locate property you list as missing on August 19, 2010 upon being returned to USP-2.

Based on the above information, your Request for Administrative Remedy is **Denied.**

If you are dissatisfied with this response, you may appeal by filing a BP-10 to the BUREAU OF PRISONS, SOUTHEAST REGIONAL OFFICE, ATTN: REGIONAL DIRECTOR, 3800 Camp Creek Parkway, SW, Building 2000, Atlanta, GA 30331-6226, within 20 calendar days from the date of this response.

_____          12/21/10
D. B. Drew, Warden                  Date

Tavon Robinson

25182-038

USP-2 / P.O. Box 1034

July 11, 2011

Dear Case Manager Carbone:

First & Foremost, I AM not trying to inconvenience You in <u>any</u> type of way, but I have a problem that I really need You to help Me with. You've always been fair with Me, & did Your job correctly, to the best of My knowledge.

In early February, 2010, I received & filled out a confiscation form that I was given by C.O. Shuler when I was allowed to review My property at Coleman Low SHU. I gave You a copy of the form I filled out, & You forwarded it to SIA Proffitt at USP-2. My problem now is, I AM being ~~accused by Supervisory Attorney~~, Zachary J. Kelton, of some how "altering" the form.

I bugged You about My confiscated photo's nearly every time I saw You, & I know You didn't lie when You told Me that You forwarded the form, & contacted Proffitt & SIA Noble personally. My request is that You please confirm the above, to assist in My dilema. I also sent a copy to Proffitt through the mail Myself.

Thank You in advance.     Respectfully, ___ Tavon Robinson